UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ABBE ACKERMAN,

        Plaintiff,

v.                              Case No:  2:14-cv-207-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## OPINION AND ORDER

Plaintiff Abbe Ackerman appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").  For the reasons discussed herein, the decision of the Commissioner is affirmed.

### I.  Issues on Appeal

Plaintiff raises three issues on appeal: (1) whether the Administrative Law Judge ("ALJ") assigned appropriate weight to the opinion of Dr. Abraham, a psychiatrist; (2) whether the ALJ erred in his assessment of Plaintiff's credibility; and (3) whether the ALJ's disability determination is supported by substantial evidence in light of new evidence submitted directly to the Appeals Council.

### II.  Procedural History and Summary of the ALJ's Decision

On August 13, 2008, Plaintiff filed an application for a period of disability, DIB and SSI alleging that she became disabled and unable to work on October 1, 2007.

Tr. 270-280.   The Social Security Administration ("SSA") denied her claim initially on September 10, 2010 and upon reconsideration on January 28, 2011.   Tr. 181, 183, 208-213; Tr. 182, 184, 216-219.   Plaintiff requested and received a hearing before ALJ Charles Reite on January 10, 2011.   Tr. 132-73.   ALJ Reite issued an opinion dated March 23, 2011 in which he found that Plaintiff became disabled on January 19, 2011 and continued to be disabled through the date of his decision.   Tr. 190-99.

Plaintiff requested review of ALJ's Reite's decision.   Tr. 254.   On October 13, 2011, the Appeals Council issued an order vacating the order and remanding the case to an ALJ to further evaluate Plaintiff's mental impairments in accordance with the regulations; give further consideration to treating source opinions and explain the weight given to each; give further consideration to Plaintiff's maximum residual functional capacity ("RFC"); and, if warranted, obtain evidence from a vocational expert ("VE") to clarify any limitations on Plaintiff's occupational base.   Tr. 206. Plaintiff received a hearing before ALJ M. Dwight Evans (hereinafter "the ALJ") on February 9, 2012, during which she was represented by the same attorney who represented her at the initial ALJ hearing.   Tr. 33-53, 49-88; Tr. 220-21.   Plaintiff and VE Ruth Horvath testified at the second hearing.   Tr. 49-88.

On July 27, 2012, the ALJ issued a decision finding that Plaintiff is not disabled and denying her claim.   Tr. 23-43.   The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2012. Tr. 26.   At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2007, the alleged onset date ("AOD").   *Id.*   At step

two, the ALJ determined that Plaintiff has the following severe impairments: status post cervical spine surgeries, status post left shoulder surgeries and status post carpal tunnel syndrome surgery.   Tr. 27.   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 28.

Taking into account the effects from all of Plaintiff's impairments, the ALJ determined that Plaintiff has the RFC to perform light work, with additional limitations.   Tr. 29.   The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are inconsistent with the ALJ's RFC determination.   Tr. 32.   The ALJ then found that Plaintiff was capable of performing her past relevant work ("PRW") as a receptionist, combination stenographer/secretary/transcriber, and secretary.   Tr. 41.   Thus, the ALJ found that Plaintiff was not disabled and denied her claim.   Tr. 43.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on January 31, 2014.   Tr. 4-9, 19.   Accordingly, the ALJ's July 27, 2012 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on April 11, 2014.   Doc. 1.

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected either to result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.   The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The district court must consider the entire record, including new evidence submitted to the Appeals Council for the first time, in determining whether the Commissioner's final decision is supported by substantial evidence.   *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1265 (11th Cir. 2007).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d

1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV.   Discussion

Plaintiff raises three overarching arguments on appeal.   Each is addressed separately.

### a.   *Whether the ALJ properly considered the opinion of Dr. Abraham*

Plaintiff argues that the ALJ erred by according little weight to the opinion of psychiatrist Dr. Gerald Abraham, which in turn resulted in erroneous determinations at step two that Plaintiff's mental impairments were nonsevere; at step three that they did not meet the Listing criteria; and at steps four and five, by failing to include any mental limitations in Plaintiff's RFC and finding that Plaintiff can perform her

PRW.   Doc. 21 at 10-11.   The Commissioner contends that substantial evidence supports the ALJ's evaluation of Plaintiff's mental impairments.   She argues that the ALJ properly assigned Dr. Abraham's opinion little weight because it was not clear whether he actually examined Plaintiff; he failed to explain the basis for his opinion; and his opinion is inconsistent with other evidence, including an opinion of Plaintiff's treating physician.   Doc. 25.

Under the Regulations, opinions of examining sources usually are given more weight than nonexamining source opinions.   20 C.F.R. § 404.1527(c)(1); 20 C.F.R. § 416.927(c)(1).   Examining source opinions are evaluated based upon the degree to which they consider all relevant evidence in the record, including the opinions of other medical sources.   20 C.F.R. § 404.1527(c)(3); 20 C.F.R. § 416.927(c)(3).   By contrast, "because nonexamining sources have no examining or treating relationship with [a plaintiff], the weight [the SSA] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions."   20 C.F.R. § 404.1527(c)(3); 20 C.F.R. § 416.927(c)(3).   Any medical source opinion may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole.   SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

Here, the ALJ's opinion provides a detailed description of the pertinent medical evidence and a lengthy discussion of the weight assigned to each medical source and the reasons therefor.   The ALJ discussed Dr. Abraham's January 19, 2011 statement

in which he evaluated whether Plaintiff met the criteria for Listing 12.04.   Tr. 446-47.   Dr. Abraham indicated that there was medically documented persistence of depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, psychomotor agitation or retardation, decreased energy, difficulty concentrating or thinking and thoughts of suicide.   Tr. 446.   Dr. Abraham stated that the depressive syndrome resulted in marked restriction in activities of daily living; marked difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence, or pace.   *Id.*   Dr. Abraham further stated that Plaintiff met the Listing criteria for the past "10+ years."   Tr. 447.

Dr. Abraham also included the following commentary:

> Essentially helpless, tearful, histrionic, pitiful acting lady, complaining of severe pain with no medical care beyond the family doctor, and need for pain medication.   She cries here, develops a high pitched voice acting in childlike fashion, and cannot understand simple explanations. Multiple depressive symptoms with suicidal thoughts (chronic).   [Plaintiff] has been successful at many jobs in the past but multiple falls and surgeries have taken their toll.   No substance abuse.   "My mind doesn't work."   "I'm no longer a person."   This is clearly a disabled person who needed direction here, and is close to full dysfunction.

*Id.*

The ALJ determined that the opinion was entitled to little weight because Dr. Abraham did not indicate in what capacity he issued his opinion or the basis for it. Tr. 40.   The ALJ determined that Dr. Abraham's opinion that Plaintiff's depression met the criteria of Listing 12.04 for the past ten years was not supported by the medical evidence.   *Id.*   The ALJ also stated that he accorded Dr. Abraham's opinion

little weight because there was no indication that Dr. Abraham reviewed Plaintiff's medical records, and his opinion was inconsistent with Plaintiff's own reports of her daily activities and abilities. *Id.*; *see, e.g.*, *Magill v. Comm'r of Soc. Sec.*, 147 Fed. Appx. 92, 94 (11th Cir. 2005) ("[A]n ALJ need not give a treating physician's opinion considerable weight if the applicant's own testimony regarding her daily activities contradicts that opinion.") (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). The ALJ also stated that he gave Dr. Abraham's opinion that Plaintiff is disabled limited weight and his opinion that Plaintiff meets a listing no weight, because those are issues reserved exclusively for the Commissioner. Tr. 40.

By contrast, the ALJ assigned "great weight" to the opinions of two state agency doctors, psychiatrist Dr. Nancy Dinwoodie and psychologist Dr. Carol Deatrick, because these doctors "had the opportunity to review the evidence of record and [their] opinions are consistent with and are supported by the evidence and the record as a whole." Tr. 41; *see also* Tr. 38. Dr. Dinwoodie completed a Psychiatric Review Technique form ("PRT") on December 3, 2008 on which she indicated that Plaintiff's affective disorders are not severe. Tr. 394. Specifically, Dr. Dinwoodie noted that Plaintiff had "depression secondary to chronic pain" and that she primarily alleged functional limitation related to the pain, but determined that it did not cause more than mild limitation in any of the four broad functional areas and the evidence did not establish the presence of the "C" criteria. Tr. 397, 404-06.

Dr. Deatrick completed a PRT on April 9, 2009 on which she identified that Plaintiff's affective disorder, specifically "depression due to pain," was nonsevere.

Tr. 428, 431.   Dr. Deatrick also found no more than mild limitation in any of the four broad functional areas and that the evidence did not establish the presence of the "C" criteria.   Tr. 438-39.   Dr. Deatrick noted that Plaintiff alleged worsening of her condition since 2007, but the December 2008 mental status examination by Plaintiff's primary care provider was normal and the January 2009 consultative examination was normal in terms of Plaintiff's mental functioning.   Tr. 440.   Dr. Deatrick concluded that, overall, the medical evidence of record did not support significant limitations due to mental issues.   *Id.*

Here, the ALJ sufficiently explained his reasons for assigning reduced weight to Dr. Abraham's opinion.   He found it was inconsistent with the overall evidence and the opinions of other medical sources, like Drs. Dinwoodie and Deatrick, and under the Regulations he could assign it less weight.   20 C.F.R. § 404.1527(c)(3); 20 C.F.R. § 416.927(c)(3); SSR 96-2p; *Crawford*, 363 F.3d at 1159-60.   The ALJ's decision in this regard therefore is supported by substantial evidence.

### b.   Whether the ALJ properly assessed Plaintiff's credibility

Plaintiff also argues that the nine specific reasons articulated by the ALJ for finding Plaintiff's reports and testimony less than fully credible are not supported by substantial evidence.   Specifically, Plaintiff contends that her activities of daily living were not properly considered and are not inconsistent with Plaintiff's alleged impairments, as found by the ALJ.   The Commissioner contends that the ALJ applied the proper legal standards, properly determined that Plaintiff's testimony

was not entirely credible and offered several reasons in support of his credibility determination that are supported by substantial evidence.

To establish disability based on pain, a plaintiff must show evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged pain, or that the objectively determined medical condition reasonably can be expected to produce the alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ determines that the plaintiff's impairments reasonably can be expected to produce the alleged symptoms, then the ALJ evaluates the evidence, including the plaintiff's testimony as to the intensity and persistence of the symptoms and whether they impact the plaintiff's ability to work. 20 C.F.R. § 404.1529(c)(1); 20 C.F.R. § 416.929(c)(1).

The Regulations require the ALJ to consider specific factors when making credibility determinations. Those factors include the claimant's daily activities; the location, duration, frequency and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medications; treatment other than medication; and any other measures to reduce pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3). SSR 96-7p further explains the process by which a claimant's credibility must be evaluated:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the

symptoms and how they affect the individual, and any other relevant evidence in the case record.

A claimant's statements as to the intensity and persistence of pain or other symptoms, or how they affect her ability to work, may not be disregarded simply because they are not supported by objective medical evidence; instead, the ALJ must state specific reasons for his credibility determination and the weight given to subjective statements, which must be supported by the record.   20 C.F.R. § 404.1529(c)(4) (subjective complaints are evaluated in relation to other evidence); 20 C.F.R. § 416.929(c)(4) (same); SSR 96-7p; *Wilson*, 284 F.3d at 1225 ("If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.").

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but found that her statements as to the intensity, persistence and limiting effects of the symptoms were not entirely credible.   Tr. 32.   The ALJ discussed Plaintiff's testimony that she stopped working in 2007 because she could no longer perform her work due to pain; spends her days taking medication, lying down and napping; and can no longer cook, clean, or drive. *Id.*   The ALJ also noted that Plaintiff testified that her condition worsened, but she did not have any diagnostic tests such as an MRI or CT scan of her spine, see a neurologist for her condition, or go to the emergency room.   *Id.*

The ALJ acknowledged that "[w]hen the alleged impairments consist primarily of subjective complaints, the claimant's credibility is especially important."   Tr. 38. The ALJ explained that he considered Plaintiff's statements, but found it was

appropriate to place greater emphasis on the objective evidence than Plaintiff's statements.  *Id.*  For example, the ALJ noted that Plaintiff reported caring for her elderly mother and a dog, which he stated "can be quite demanding both physically and emotionally," and therefore concluded that her ability to perform these activities is inconsistent with her allegations of severe disabling symptoms.  *Id.*  The ALJ also discussed Plaintiff's reports that she can perform household chores, drive, shop, read and handle financial matters.  *Id.* at 39.

Daily activities are properly considered when evaluating complaints of disabling pain.  20 C.F.R. § 404.1529(c)(3)(i); 20 C.F.R. § 416.929(c)(3)(i).  While the performance of everyday tasks cannot be used as the sole evidence to determine that a claimant is not disabled, Plaintiff's participation in such activities supports the ALJ's determination that she is capable of working, with restrictions.  *See, e.g.*, *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that the ALJ properly discredited a treating physician's testimony by pointing out the contrasts in the claimants daily activities and the physician's diagnosis); *Wilson*, 284 F.3d at 1226 (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because her daily activities demonstrated otherwise).  The ALJ also noted that Plaintiff was able to work for years after her surgeries, since Plaintiff's most recent back surgery was in 1990 and her last shoulder surgery occurred seven or eight years prior to the hearing, which he found also is inconsistent with her alleged chronic pain and disability.  Tr. 38.

The ALJ also stated that the record "reflects significant gaps" in Plaintiff's treatment history, noting that she did not seek treatment for her physical complaints until December 2007 and there were "significant gaps" in between visits to her treating physician from 2007 to 2012.  *Id.*  The ALJ determined that Plaintiff's failure to seek treatment during those times "indicates that her condition was not as severe as alleged."  *Id.*  Indeed, "[a] claimant's failure to seek medical treatment is also relevant in assessing credibility."  *Sheldon v. Astrue*, 268 Fed. Appx. 871, 872 (11th Cir. 2008).   Plaintiff contends that there were no significant gaps in Plaintiff's medical treatment because before she was terminated her employer was her treating physician, but she offers no evidence other than her own testimony to support this assertion.   Doc. 21 at 23 (citing Tr. 327, 343).   Although the ALJ has a duty to develop a full and fair record, "the ALJ is not required to act as counsel to develop a claimant's case."  *Sindaco v. Colvin*, No. 6:14-cv-164-Orl-DAB, 2015 WL 867917, at *3 (M.D. Fla. Mar. 2, 2015).   Indeed, "[i]t is Plaintiff's burden to prove that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of [her] claim."  *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)); *see also* 42 U.S.C. § 423(d)(5)(a); 20 C.F.R. §§ 404.1512(a), (c); 20 C.F.R. §§ 416.912(a), (c).

The ALJ also discussed how "[t]he medical records reflect that all treatment rendered since the [AOD] has been conservative and non-aggressive."   Tr. 39. Plaintiff contends she did not pursue additional treatment after her surgeries because "it was unclear whether further procedures would be possible" and that her

failure to see a neurologist was due to her inability to find one willing to accept Medicaid.   Doc. 21 at 23.   Plaintiff also argues that the ALJ should not have discredited her testimony based on her use of over the counter ("OTC") medications, because the OTC medications were used in addition to her prescription medication. *Id.*   Whatever the reason, and the Court will not speculate as Plaintiff invites it to do, the ALJ cited Plaintiff's conservative treatment as only one of many reasons for finding Plaintiff's testimony less than credible.   This was entirely proper for the ALJ to consider, as "[a] doctor's conservative medical treatment for a particular condition tends to negate a claim of disability."   *Sheldon*, 268 Fed. Appx. at 872.

The ALJ also noted that Plaintiff's treating doctor did not impose specific standing, sitting, lifting, or concentrating restrictions, and there is evidence that Plaintiff stopped working because she was terminated, not because she could no longer perform the work-related duties.   Tr. 39.   In her brief, Plaintiff invites the Court to speculate that Plaintiff actually stopped working due to her impairments. As the Commissioner states, however, the question before the Court is "whether substantial evidence supports the ALJ's finding, not whether it supports a different one."   Doc. 25 at 22 (citing *Crawford*, 363 F.3d at 1158).

Because the record contains evidence suggesting Plaintiff may have stopped working for reasons unrelated to disability, the ALJ properly considered this evidence in making his credibility determination.   *See, e.g., Levie v. Comm'r of Soc. Sec.*, 514 Fed. Appx. 829, 831 (11th Cir. 2013) (noting evidence that showed the plaintiff was fired from previous employment for reasons other than inability to work supported

the ALJ's finding that the plaintiff was not disabled); *Ricker v. Comm'r of Soc. Sec.*, No. 5:13-cv-479-Oc-18PRL, 2014 WL 6610849, at *10 (M.D. Fla. Nov. 21, 2014) (finding the plaintiff's admission that he stopped working because he was laid off rather than because he was unable to work properly was considered by the ALJ in evaluating the plaintiff's credibility); *Everette v. Astrue*, No. 8:12-cv-106-T-TGW, 2013 WL 461784, at *7 (M.D. Fla. Feb. 6, 2013) ("Additionally, the law judge noted that the plaintiff stopped working due to personal reasons, and that the plaintiff never had a significant work history, which suggested to the law judge that the plaintiff's unemployment was for reasons other than an inability to work due to her physical and mental impairments."). The ALJ also determined that many of Plaintiff's subjective complaints, such as decreased concentration, difficulty focusing, memory problems, dizziness and her needs to lie down, elevate her legs and use an assistive device are not supported to the degree alleged by competent medical evidence. Tr. 39.

Credibility determinations, resolving conflicts in the evidence and drawing inferences therefrom are functions of the Commissioner, not the Court. *Parker v. Colvin*, No. 8:12-cv-1919-T-24-TGW, 2013 WL 3209443, at *2 (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) and *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963)). Instead, the Court's role is limited to determining whether the ALJ's decision is supported by substantial evidence. To that end, "[t]the question is not . . . whether [the] ALJ could have reasonably credited [the plaintiff's] testimony,

but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 Fed. Appx. 935, 939 (11th Cir. 2011).

Here, the ALJ determined that Plaintiff's subjective complaints are not entirely credible, and Plaintiff is not as limited as alleged.  As set forth above, the ALJ sufficiently explained his reasons for finding Plaintiff less than entirely credible, and it is not for the Court to reweigh the evidence.  Nor will it disturb a clearly articulated credibility finding that is supported by substantial evidence.  *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *Foote*, 67 F.3d at 1562 (same); *Lawson v. Astrue*, No. 8:07-cv-243-T-TGW, 2008 WL 681097, at *2 (M.D. Fla. Mar. 7, 2008) ("It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.") (citing *Grant*, 445 F.2d 656).  The ALJ discussed in detail the specific portions of the record and Plaintiff's testimony that he found were inconsistent or exaggerated, and upon review the Court finds that substantial evidence supports the ALJ's credibility determination.

> c.  *Whether the Appeals Council erred by failing to remand this case to an ALJ in light of new evidence*

Finally, Plaintiff contends that a November 8, 2012 source statement completed by Kenneth Miller, a physician's assistant ("PA"), and Dr. Krishnan undermines the ALJ's findings and requires remand to the Commissioner. Specifically, Plaintiff argues that the ALJ's opinion identifies the failure to include restrictions on standing, sitting, lifting or concentrating as a reason for assigning Dr. Krishnan and PA Miller's opinions reduced weight, and because the November 8

statement includes such restrictions it is relevant to assessing both Plaintiff's credibility and the weight accorded to the opinions of Dr. Krishnan and PA Miller. Doc. 21 at 19.   Plaintiff acknowledges that the November 8 statement was submitted to the Appeals Council, which considered it in conjunction with Plaintiff's request for review of the ALJ's decision and made the statement part of the administrative record.   *Id.* at 18; *see* Tr. 7-8.   The Commissioner asserts that the November 8 statement does not establish that remand is warranted, because the opinion relies mostly on Plaintiff's subjective complaints and therefore still is entitled to little weight.   Doc. 25 at 18-19.   Nor, the Commissioner argues, does it contradict the ALJ's opinion or show that it is more likely than not that the evidence would change the ALJ's disability determination.   *Id.*

The Appeals Council will review an ALJ's decision only if his action, findings, or conclusion is contrary to the weight of evidence in the record.   *Ingram*, 496 F.3d at 1261 (citing 20 C.F.R. § 404.970(b)).   The Eleventh Circuit has explained that "[w]hen a claimant properly presents new evidence to the AC and it denies review, we essentially consider the claimant's evidence anew to determine whether 'that new evidence renders the denial of benefits erroneous.'"   *Burgin v. Comm'r of Soc. Sec.*, 420 Fed. Appx. 901, 903 (11th Cir. 2011) (quoting *Ingram*, 496 F.3d at 1262).   Thus, it is for this Court to determine whether the new evidence renders the ALJ's decision erroneous.   *Ingram*, 496 F.3d at 1262.

The new evidence in question is a Physical Capacity Evaluation ("PCE") form completed on November 8, 2012 and signed by both Dr. Krishnan and PA Miller.   Tr.

516-20.   The PCE asks the author to indicate whether the patient can lift and carry various amounts of weight never, seldom, occasionally, or frequently.   Tr. 516.   Dr. Krishnan and PA Miller indicated that Plaintiff can occasionally lift and carry up to 5 pounds, seldom carry 6-10 pounds and never lift or carry any amount greater than 10 pounds, because lifting or carrying would aggravate Plaintiff's back pain and exacerbate her fibromyalgia.   *Id.*   The PCE also states that Plaintiff can seldom push/pull while seated or standing, bend, or climb; and never squat, crawl, or reach above shoulder level.   Tr. 517.

PA Miller and Dr. Krishnan also state that assuming an eight hour workday, they would expect Plaintiff to be able to sit for less than one hour, stand for less than one hour, walk for less than three hours and alternate sitting and standing less than two hours, and she would require frequent position changes and excessive breaks wherein it will be necessary for her to lie down and rest.   *Id.*   The PCE also includes additional limitations, including that Plaintiff should totally avoid unprotected heights and moving machinery, and states that she has moderate restrictions in driving automobile equipment and mild restrictions in exposure to marked changes in temperature/humidity and exposure to dust, fumes and gases.   *Id.*

With respect to pain, the PCE states that Plaintiff has severe pain that is likely to affect her ability to concentrate in a work-like setting.   *Id.*   Although the PCE does not indicate that Plaintiff's impairments interfere with use of her fingers, hands, or arms, Dr. Krishnan and PA Miller checked the "mild" box with respect to whether Plaintiff's impairments interfere with her abilities to perform fine and gross

dexterous movements of her left and right upper extremities.  Tr. 518.  The PCE also states that Plaintiff has muscle spasms and tenderness of marked intensity, numbness/tingling and weakness in her lower extremities of moderate intensity and mildly decreased sensation.   Tr. 519.   The PCE notes Plaintiff's depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking and thoughts of suicide.   *Id.*

Plaintiff was noted also only to have mild restriction in her abilities to understand or remember short, simple instructions; make judgments based on simple work related decisions; remember locations and/or work like procedures; accept instructions and respond appropriately to criticism from supervisors; and set realistic goals or make plans independently of others.  Tr. 519-20.  The PCE states that Plaintiff has "extreme" limitation in her abilities to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; "marked" limitation in her abilities to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and "moderate" limitation in her ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.  Tr. 520.  Finally, the PCE provides an estimate that Plaintiff would, on average, be absent four or more days per month as a result of her impairments.   *Id.*

Even if the content of the PCE were to bolster Dr. Krishnan's prior statements as to Plaintiff's limitations, Dr. Krishnan offers no particular grounds and cites to no new evaluations or treatment upon which the PCE is based.  *See* Tr. 516 (listing "past several" visits as the basis for the opinion, rather than any clinical findings, medical test results, or laboratory results).   Moreover, the limitations in the PCE are in stark contrast to other record evidence, such as Dr. Thomas Renny's April 6, 2009 Physical RFC Assessment, in which he opined that Plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand or walk about 6 hours in an 8 hour workday with normal breaks, sit about 6 hours in an 8 hour workday with normal breaks and was not limited in her ability to push and/or pull, except as to the weight limitations for lifting and carrying.[1]   Tr. 421.

Dr. Renny also found that Plaintiff never can climb ladders, ropes, or scaffolds, but occasionally can climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Tr. 422.   He determined that Plaintiff was limited to frequently reaching for her right side, but could perform unlimited handling (gross manipulation), fingering (fine manipulation) and feeling.   Tr. 423.   Dr. Renny also determined that Plaintiff should avoid concentrated exposure to vibration and hazards such as machinery and heights due to her medications, but otherwise had no environmental limitations.   Tr. 424.

---

[1] Similar limitations were identified in a Physical RFC Assessment completed by Single Decisionmaker Jennifer Drieu, but the ALJ assigned no weight to this opinion because "she is not an acceptable medical source."   Tr. 41; *see* Tr. 412-19.

The Regulations provide that an ALJ may properly assign reduced weight to a treating source opinion that is inconsistent with and unsupported by other evidence in the record.  20 C.F.R. §§ 404.1527(c)(3), (4); 20 C.F.R. §§ 416.927(c)(3), (4); SSR 96-2p; *Crawford*, 363 F.3d at 1159-60.  Generally, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 Fed. Appx. 849, 854 (11th Cir. 2014) (citing *Phillips*, 357 F.3d at 1240); 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Comm'r of Soc. Sec.*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).  "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips*, 357 F.3d at 1240).

Finally, although Plaintiff correctly contends that the ALJ identified Dr. Krishnan's failure to "provide the physical and/or mental work limitations that make the claimant disabled" as a basis for assigning Dr. Krishnan's opinion less than controlling weight, the ALJ identified and enumerated a total of eight grounds that he believed demonstrated good cause for according the treating doctor's opinion reduced weight.  Tr. 40.  Specifically, the ALJ found that Dr. Krishnan's opinion was entitled to reduced weight because he only had seen Plaintiff five times by November 25, 2008, when he opined about her ability to work; the November 25, 2008 opinion was rendered without objective diagnostic testing; recent treatment records

did not include a diagnosis of a spine disorder and reflect normal musculoskeletal examinations; his opinion that Plaintiff is disabled does not include diagnoses of conditions that form the basis of his opinion; Dr. Krishnan's opinion is not "well supported" by medically acceptable clinical and laboratory diagnostic techniques; and the medical evidence of record failed to confirm the severity of Plaintiff's conditions, and Dr. Krishnan's opinion is inconsistent with the medical evidence and the record as a whole. *Id.*

Upon thorough review of the entire record, including the PCE submitted directly to the Appeals Council, the ALJ identified good cause for according Dr. Krishnan's opinion reduced weight; and the November 8, 2012 PCE does not undermine the ALJ's disability determination. Instead, the Court concludes that substantial evidence supports the ALJ's decision. As such, the Appeals Council did not err by failing to remand the case to the ALJ for further consideration.

## V.   Conclusion

When reviewing the final decision of the Commissioner, the Court does not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178. Thus, much of what Plaintiff invites the Court to reconsider is beyond the limited scope of the Court's review, as it would require such reweighing. Instead, upon review of the record as a whole, the Court finds that the ALJ applied the proper legal standards when determining that Plaintiff is not disabled, and his decision is supported by substantial evidence. Moreover, because the new evidence submitted for the first time to the Appeals Council does not render the ALJ's actions, findings

or conclusion contrary to the weight of evidence in the record, the Appeals Council did not err by failing to remand the case to the ALJ for further consideration.

ACCORDINGLY, it is hereby

**ORDERED:**

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 4th day of June, 2015.


CAROL MIRANDO
United States Magistrate Judge


Copies:
Counsel of record